UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Richard Fageroos, Jr.,

        Plaintiffs,                    Court File No. 16-cv-4230 (ECT/LIB)

v.

Shelby Richardson, et al.,            **REPORT AND RECOMMENDATION**

        Defendants.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss. [Docket No. 40].

On June 30, 2017, the Honorable John R. Tunheim stayed the present case. (Fourth Amended Order [Docket No. 28]. On October 22, 2018, Judge Tunheim lifted the stay. (Order Lifting Stay [Docket No. 33].

On February 27, 2019, the Court established a briefing schedule for Defendants' Motion to Dismiss. (Order [Docket No. 46]). In accordance with the briefing schedule, on April 4, 2019, the Court took Defendants' Motion under advisement on the parties' written submissions. (Id.).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 40], be **GRANTED**.

**I.  BACKGROUND AND STATEMENT OF FACTS[1]**

Richard Fageroos Jr., (hereinafter "Plaintiff"), is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Compl., [Docket No. 1], at 1). Plaintiff resides at MSOP's Moose Lake facility. (Id.).

On June 18, 2015, all clients of the Moose Lake Facility received a memorandum from Defendant Puffer, which referenced the upcoming room reassignments for clients in Complex Unit 1-D of the Moose Lake Facility. (Compl., [Docket No. 1], at 4). The memorandum stated the following:

> Many clients are seeking clarification/updates on the development of the 1-D unit. We asked a significant number of people to provide us with preferences with roommates and we continue to work with clients who are experiencing difficulty with change. I understand it can be frustrating and sometimes anxiety producing – please utilize your support system and treatment teams to help you manage. I appreciate your patience. There is no timeline at the moment as we are trying to support and honor peoples' choices. When a more structured timeline is developed you will be informed.

(Id.).

On September 2, 2015, approximately 100 clients were scheduled to be reassigned to their new rooms. (Id. at 6). Plaintiff, however, refused to move to his newly assigned room because "he was just fine with the roommate he had and the cell he was in." (Id. at 5–6). This refusal to move to his new room caused an Incident Command System ("ICS") to be initiated on Plaintiff. (Id.). As a result, Defendant Carey and Defendant Beavens gave Plaintiff a Major Behavioral Expectation Report (BER) for both failing to comply, as well as, for missing, delaying, or interrupting count. (Id.).

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiff. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

2

Thereafter, also on September 2, 2015, Plaintiff was placed in the High Security Area ("HSA") of the Moose Lake Facility for refusing placement into his new room in Complex Unit 1-D. (Id. at 6). After Plaintiff was placed in the HSA, he was given a Protective Isolation Status Placement and Administrative Review. (Id. at 5). According to the present Complaint, the Review document stated:

> On 9/2/15, at approximately 1040 hours, Client Richard Fageroos refused to move from 1-A to his assigned room (218B) on Unit 1-D. After the formal count process began, this client remained on 1-A near the upper day room during formal count. When he was asked to comply with going to his assigned unit he refused. Mr. Fageroos was unwilling to move to Unit 1-D at this time. Mr. Fageroos was informed that he was going to be placed in the High Security Area for refusing placement. The client also did not comply with count procedures when he chose not to accept placement on the assigned living unit. The client was placed in the High Security Area on Protective Isolation status at 10:45 hours.

(Id. at 5–6).

Additionally, on September 2, 2015, Defendant Collins and Defendant Menard implemented an Individual Program Plan Method ("IPPM") for Plaintiff that stated, in part, the following:

> **Problem:** Mr. Fageroos refuses to move to his assigned living unit, Unit 1D.
> **Descriptions:** On 9.2.15, an incident command system was imitated [sic] for Mr. Fageroos refusing placement on Unit 1D.
>
> . . .
>
> **Goal:** Mr. Fageroos will move to his assigned living unit, Unit 1D.
> **Procedure:** Mr. Fageroos will have access to two 30 minute breaks daily (in the high security are[a] common area) to address hygiene, exercise, and fresh air. Mr. Fageroos will submit client requests for anything outside of these parameters of hygiene, exercise, and fresh air. He will be asked one time per shift if he is ready to leave the high security area. If Mr. Fageroos chooses to return to leave the high security area, staff will work with him at that time. This move can occur between 6:30 a.m. and 9:45 p.m. If Mr. Fageroos requests to move outside of these hours he will have to wait until the next day to be moved.

(Id. at 7).

The next day, on September 3, 2015, Defendant O'Connor, in a document entitled "Minnesota Sex Offender Program Discontinuation of Protective Isolation Status," indicated that Plaintiff's behavior no longer threatened the safety and security of the Moose Lake Facility and that Plaintiff had successfully met the designated release criteria. (Id. at 9). The document concluded that Plaintiff's protective isolation was no longer warranted and that he could leave the HSA. (Id.). When Plaintiff was informed that he could leave the HSA, he refused. (Id.).

According to the Complaint, on September 9, 2015, Plaintiff was still refusing to leave the HSA. (Id. at 8). He was provided an updated copy of his IPPM, which stated in part:

> **Date Reviewed:** 9.9.15 During a clinical follow up on his readiness to move to Unit 1D, Mr. Fageroos declined to speak with staff about moving and remains in the High Security Area.

(Id.). Plaintiff was provided with additional IPPM updates on September 17, 2015, and September 25, 2015, which similarly noted that Plaintiff was still refusing to leave the HSA. (Id.).

On October 28, 2015, Plaintiff still refused to leave the HSA. (Id. at 12). Defendant Wandling and Defendant Bodie-Miner thus updated Plaintiff's IPPM, stating, "During a clinical follow up on his readiness to move to Unit 1D or Omega 1, Mr. Fageroos reported there is nothing in Omega 1. But would move to Omega 3." (Id.).

On November 17, 2015, Plaintiff accepted a move to Unit Omega 3 after residing in the HSA for approximately 75 days. (Id. at 15). That same day, Defendant Wandling and Defendant Bodie-Miner signed a document discontinuing Plaintiff's placement in HSA and directly moved Plaintiff to a room in the Omega 3 complex. (Id. at 11). During Plaintiff's entire placement in the HSA, he was denied access to all of his mail. (Id. at 9).

On the basis of the foregoing factual allegations, liberally construing the pro se Complaint, Plaintiff asserts claims against Defendants in both their individual and official capacities for

4

violations of his Fourth Amendment rights, as well as, his substantive and procedural due process rights under the Fourteenth Amendment. As relief, Plaintiff requests Defendants be permanently and prospectively enjoined from engaging in the same or similar practices as alleged, and that the Court award him monetary damages. (Id. at 19–20).

## II. DEFENDANTS' MOTION TO DISMISS. [DOCKET NO. 40].

Defendants move the Court for an Order dismissing Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and because of a failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mem. in Supp. [Docket No. 42]).

### A. Standard of Review

To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of facts, which, if proven true, would entitle the plaintiff to legal redress against the named defendants under an established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). In short, "the complaint must allege facts, which if true, state a claim as a matter of law." Id. When deciding a Rule 12(b)(6) motion to dismiss, a court generally may not consider materials outside the pleadings and assumes all facts alleged in the complaint are true, construing all reasonable inferences from those facts in the light most favorable to the complainant. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008); Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly raised," nor is the court required to "read or construct an argument into a civil-rights pleading." Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004). "Pro se litigants are not excused from complying with court orders or substantive and procedural law." Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988) (citing Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984)). Likewise, while pro se complaints "are to be held to less stringent standards than formal pleadings drafted by lawyers, a district court should not assume the role of advocate for the pro se litigant, nor may a district court rewrite a [complaint] to include claims that were never presented." Semler v. Ludeman, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *5 (D. Minn. Jan. 8, 2010) (internal quotation marks and citations omitted).

Defendants also cite Federal Rule 12(b)(1) as a basis for their Motion to Dismiss. (Defs.' Opp., [Docket No. 42], at 3). Rule 12(b)(1) states that a party may move to dismiss a claim for lack of subject matter jurisdiction. Defendants' arguments regarding the applicability of Eleventh Amendment immunity implicates the Court's subject matter jurisdiction over certain claims and is a challenge to the Complaint based on the face of the complaint. "In a facial challenge to jurisdiction, such as the one before this Court, review is restricted to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." Beaulieu v. Ludeman, No. 07-cv-1535 (JMR/JSM), 2008 WL 2498241, at *5 (D. Minn. June 18, 2008).

6

### B. Analysis

#### 1. Sovereign Immunity

Based on the Eleventh Amendment, Defendants argue that any federal claims for monetary damages brought against them in their official capacities should be dismissed, as the Court lacks subject matter jurisdiction over such federal claims. (Defs.' Opp., [Docket No. 42], at 5–6). The Court agrees.

A suit against a public employee in that person's official capacity is merely a suit against the public employer. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). "The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action." Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997). "To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so." Faibisch v. University of Minnesota, 304 F.3d 797, 800 (8th Cir. 2002) (citing Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238–40 (1985)).

Here, Plaintiff has not established that Minnesota has waived its immunity from damages for any of the claims at issue in this case, nor has Plaintiff established that Congress abrogated Minnesota's immunity with respect to any of the claims at issue. See, Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997) (42 U.S.C. § 1983 claims for damages against individual defendants in their official capacities are barred by Eleventh Amendment). As such, to the extent that Plaintiff seeks monetary damages from Defendants in their official capacities under federal law, such claims should be dismissed for lack of subject matter jurisdiction.

Accordingly, this Court recommends dismissing with prejudice all of Plaintiff's official-capacity claims against the named Defendants which seek to recover monetary damages.[2]

### 2. Plaintiff's Federal Constitutional Claims

Plaintiff brings his claims under 42 U.S.C. § 1983. (Compl., [Docket No. 1], at 22). To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege a] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. Id.

#### i. Procedural Due Process

Plaintiff alleges that his confinement in the HSA and the temporary restriction of his mail while he was placed in the HSA violated his procedural due process rights under the Fourteenth Amendment. (Compl., [Docket No. 1], at 9, 16).

---

[2] This leaves the theories of Plaintiff's claims for injunctive relief against the Defendants in both their official and individual capacities, as well as, his claims for monetary damages against the Defendants in their individual capacities for further review by the Court.

> "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant[s] deprived him of such an interest without due process of law." "Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" "The fundamental requirement of due process 'is the opportunity to be heard at a meaningful time and in a meaningful manner.'"

Schmidt v. Des Moines Public Schs., 655 F.3d 811, 817–18 (8th Cir. 2011) (internal citations omitted).

"'We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"; where no liberty or property interest is identified, a procedural due process claim necessarily fails. See, Bealieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). If a Plaintiff does have a protected interest, the Court "then consider[s] what process is due by balancing the specific interest that was affected, the likelihood that the procedures would result in an erroneous deprivation, and the interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Senty–Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (citing Mathews v. Eldridge, 424 U.S. 319, 332–35 (1976)).

### a. HSA Confinement

As a person civilly committed to the MSOP, Plaintiff enjoys a protected—but not unlimited—liberty interest in freedom from unnecessary bodily restraint. See, Youngberg v. Romeo, 457 U.S. 307, 319–20 (1982). Therefore, Plaintiff arguably has a protected liberty interest at stake when he is placed in the HSA, which affords him some measure of due process. See, Perseke v. Moser, No. 16-cv-557 (PJS/LIB), 2016 WL 6275191, at *5 (D. Minn. Sept. 26, 2016) (finding that an MSOP client "arguably has a protected liberty interest at stake when he is placed in the HSA").

9

Even if placement in the HSA implicates protected interests, however, the Complaint contains no factual allegations that show Plaintiff received less than the process he was due. Even construed liberally, the only allegations Plaintiff makes in the Complaint are that the MSOP violated his procedural due process rights by placing him in HSA because he was never out of behavioral control. (Compl., [Docket No. 1], at 18). Additionally, in his Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiff only argues that "[t]he limited record currently before this Court is insufficient to determine that, as a matter of law, the policy was applied in a reasonable manner." (Plf.'s Opp., [Docket No. 47], at 16). Nowhere, however, does Plaintiff allege in his Complaint that he was ever deprived of the opportunity to be heard or appeal the decision to temporarily place him in the HSA.

Rather, the Complaint shows that Plaintiff received verbal notice of why he was immediately placed in the HSA for refusing to move to his new room. (Compl., [Docket No. 1], at 5). Additionally, Plaintiff received formal documentation of the reasons as to why he was placed into the HSA and he received a BER further addressing the incident. (Id.). Plaintiff has not alleged what additional process he was due, nor has he alleged that Defendants limited his procedural options in any way. Thus, without any allegation that Defendants actually deprived Plaintiff of a protected liberty or property interest <u>without procedural protections</u>, Plaintiff has failed to allege sufficient facts to support a plausible claim for a violation of his procedural due process rights. <u>See</u>, <u>Schmidt</u>, 655 F.3d at 817–18.

Therefore, even construed liberally, the pro se Complaint does not plead sufficient facts to present a facially plausible claim that Plaintiff's opportunities to be heard concerning his placement in the HSA did not actually satisfy due process requirements.

Accordingly, the Court recommends that to the extent that Plaintiff brings a claim that the procedure by which he was placed into and kept in the HSA violated his procedural due process rights, all such claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### b. Mail

Defendants argue that Plaintiff's procedural due process claim for restricting his mail while he was in HSA also fails because Plaintiff has not alleged that he was afforded less than the process that was due. (Mem. in Supp., [Docket No. 42], at 18). In his Opposition to Defendants' Motion to Dismiss, Plaintiff does not address his due process claim for temporarily restricting his access to his mail while he was in the HSA. (See, Plf.'s Opp. [Docket No. 47]).

The Complaint only summarily alleges that Plaintiff was not provided his personal mail while he was placed in the HSA. (Compl., [Docket No. 1], at 9). However, the Complaint does not include any allegation that Plaintiff attempted to utilize the procedures for appeal of the temporary restriction on his mail while he was placed in the HSA, nor that Defendants prevented him from doing so. Without any allegation that Defendants actually deprived Plaintiff of a protected liberty or property interest without procedural protections, Plaintiff has failed to allege sufficient facts to support a plausible claim for a violation of his procedural due process rights. See, Schmidt, 655 F.3d at 817–18.

Accordingly, the Court recommends that to the extent that Plaintiff brings a claim that his procedural due process rights were violated when his mail was temporarily restricted while he was in the HSA, all such claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### ii. Substantive Due Process

Plaintiff further contends that Defendants violated his substantive due process rights when they placed him in the HSA and temporarily restricted his mail while he was placed in the HSA. (Compl., [Docket No. 1], at 9, 16).

> [T]o prevail on an as-applied due process claim, that the state defendants' actions violated the plaintiffs' substantive due process rights, the plaintiffs must demonstrate both that the [state defendants'] conduct was conscience-shocking, and that the [state defendants] violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. . . .
> . . . To determine if the actions were conscience-shocking, the district court should consider whether the state defendants' actions were egregious or outrageous. To meet this high standard, we have explained that the alleged substantive due process violations must involve conduct so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

Karsjens v. Piper, No. 15-cv-3485, 2017 WL 24613, *9 (8th Cir. Jan. 3, 2017) (internal quotations marks and citations omitted). "Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise." Strutton v. Meade, 668 F.3d 549, 557 (8th Cir. 2012) (citation omitted).

#### a. HSA Confinement

Regarding his placement in the HSA, Plaintiff argues that he has a protected "right to be free from arbitrary government actions" and that the act of placing him in the HSA violated his substantive due process rights. (Plf.'s Opp., [Docket No. 42], at 14). As stated above, however, Plaintiff's liberty interest in freedom from unnecessary bodily restraint is not unlimited. See, Youngberg, 457 U.S. at 319–20.

Under Youngberg, the question is "whether the extent or nature of the restraint . . . is such as to violate due process." 457 U.S. at 320. To determine the answer, the Court must balance

12

Plaintiff's "liberty interest[ ] against the relevant state interests." Id. at 321. The Eighth Circuit has applied Youngberg to the MSOP:

> "In operating an institution such as [the MSOP], there are occasions in which it is necessary for the State to restrain the movements of residents—for example, to protect them as well as others from violence." [Youngberg, 457 U.S. at 320.] "The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint . . . is such as to violate due process." [Id.].

Beaulieu, 690 F.3d at 1031. When deciding whether a civilly committed person's liberty interest in freedom from unreasonable restraint has been unconstitutionally infringed upon, "courts must show deference to the judgment exercised by a qualified professional." Youngberg, 457 U.S. at 322.

> [T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

Id. at 323.

While Plaintiff has a constitutionally protected interest in reasonably nonrestrictive confinement conditions, See, Id. at 324, the decision to place Plaintiff into the HSA temporarily on September 2, 2015, is presumptively valid. Specifically, the record presently before the Court shows that Defendants initially placed Plaintiff in the HSA for no more than a 24-hour period because Plaintiff refused to comply and move to his assigned new room in Complex Unit 1-D of the Moose Lake Facility. Despite Plaintiff's conclusory statement that Defendants did not base the decision to place Plaintiff on their professional judgment, Plaintiff simply has not alleged any facts that would support a reasonable inference that the involved Defendants did not base their decision to temporarily place Plaintiff in HSA on professional judgment.[3]

---

[3] The Court notes that the Complaint in fact appears to indicate that Defendants did use their professional judgment when placing Plaintiff in the HSA. Specifically, on September 2, 2015, Plaintiff refused to move to his newly assigned room at a time when 100 other clients were also scheduled to move to their newly assigned rooms. (Compl., [Docket

13

Accordingly, Plaintiff has failed to plead sufficient facts to withstand a Rule 12(b)(6) motion to dismiss these claims. Therefore, the Court recommends dismissing without prejudice Plaintiff's substantive due process claims based on his allegation that confinement in the HSA violated his substantive due process rights because the Complaint fails to state a claim upon which relief may be granted.

### b. Mail

With regard to temporarily restricting Plaintiff's mail while he was placed in the HSA, Defendants argue that Plaintiff has also failed to allege facts to sufficiently plead a substantive due process claim because he has not alleged any conduct that shocks the conscience. (Mem. in Supp., [Docket No. 42], at 16). In his Memorandum in Opposition, Plaintiff does not address the temporary restriction of his mail as it relates to Defendants' alleged substantive due process violation. (See, Plf.'s Opp. [Docket No. 47]).

Denying an individual access to his personal property while that individual is in the HSA, including denying that individual access to their mail, is not the type of conscious-shocking conduct required for a substantive due process violation. See, Pettis v. Osborne, 16-cv-2376 (JNE/LIB), ECF No. 52 at 17 (November 20, 2018) (holding that denying access to an individual's personal property while that individual is in the HSA is not an action that shocks the conscious). Plaintiff has not alleged that anything about his mail being temporarily restricted while he was placed in the HSA was either egregious or outrageous. See, Karsjens, 845 F.3d at 408; Favors v. Hoover, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, at *16 (D. Minn. Sept. 30, 2014).

---

No. 1], at 6). By refusing to move, the Complaint shows that Plaintiff caused count to be delayed. Thus, on its face it appears from the facts alleged in the Complaint that Defendants used their professional judgment by moving Plaintiff to the HSA in order to prevent any further delay or disruption to the move and count of many other MSOP clients from Plaintiff's refusing to move to his newly assigned room. Moreover, Plaintiff's continued presence in HSA was due to his continued and repeated refusal to move to his assigned room despite repeated opportunities to do so.

14

Thus, even reading the pro se Complaint as a whole, construing it liberally, taking all the facts pled within as true, and drawing all reasonable inferences in Plaintiff's favor, he has failed to make sufficient factual allegations pursuant to Rule 12(b)(6) to support any plausible claim for a violation of his substantive due process rights due to the restriction of his mail while he was in the HSA.

Accordingly, pursuant to Rule 12(b)(6), this Court recommends dismissing without prejudice all of Plaintiff's substantive due process claims regarding his mail for failure to state a claim upon which relief can be granted.

### iii. Fourth Amendment Claim

In his Complaint, Plaintiff alleges that he was unreasonably seized in violation of the Fourth Amendment of the Constitution when Defendants detained him in the HSA for more than 24 hours because he was not out of behavioral control. (Compl., [Docket No. 1], at 18).

Despite Plaintiff's argument to the contrary, Defendants contend that Plaintiff voluntarily chose to stay in the HSA. (Mem. in Supp., [Docket No. 42], at 10). Defendants' contention is supported by the record. Specifically, the Plaintiff's Complaint itself shows that after Defendants first placed Plaintiff in the HSA, the next day he was authorized to leave the HSA. (Compl., [Docket No. 1], at 9). However, Plaintiff refused to leave the HSA because he still refused to move to his newly assigned room, and thus, he voluntarily chose to remain in the HSA. The Complaint also shows that Defendants asked Plaintiff on a daily basis if he was ready to leave the HSA. (Id. at 8). Thus, according to facts alleged in the Complaint, Plaintiff voluntarily chose throughout the operative time at issue to remain placed at the HSA rather than accept his new room assignment.

As correctly noted by Defendants, a voluntary choice does not form the basis of a Fourth Amendment claim. See, Florida v. Bostick, 501 U.S. 429, 439 (1991) ("The Fourth Amendment

15

proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation."). Thus, to the extent Plaintiff argues that the approximately 75 days he remained in the HSA constituted an unreasonable seizure, his claim should be dismissed because, on the face of his own Complaint, he voluntarily chose to remain in the HSA.

Furthermore, to the extent Plaintiff is claiming that his less than one day initial placement in the HSA on September 2, 2015, amounted to an unreasonable seizure in violation of the Fourth Amendment, the Court concludes that the violation of any liberty interest resulting from that initial placement is more properly viewed in the context of Plaintiff's procedural due process claim, which the Court has already found to be insufficiently plead. See, supra, Section 2.i.a.

### a. Mail

In his Complaint, Plaintiff also alleges that his Fourth Amendment rights were violated because his mail was withheld from him while he was placed in the HSA. (Compl., [Docket No. 1], at 9). Liberally construing the pro se Complaint, Plaintiff appears to argue that restricting his mail in any way is a violation of his Fourth Amendment rights. (Compl., [Docket No. 1], at 9). The restriction of mail, however, does not implicate the Fourth Amendment. The Court has not found, nor can the Court discern, a situation where solely denying a civilly committed person access to his mail temporarily would implicate his property rights under the Fourth Amendment. Even so, the Eighth Circuit has consistently held that temporarily withholding mail from confined persons is constitutional. Grady v. Wilken, 735 F.2d 303, 306 (8th Cir.1984) (finding that a twenty-day hiatus of inmate's receipt of mail due to the inmate's transfers to disciplinary detention and to administrative segregation did not impermissibly infringe on inmate's First Amendment rights or rights to access the courts); Jackson v. Brookhart, 640 F. Supp. 241, 242 (S.D. Iowa 1986) (finding that the withholding of an inmate's mail for 286 days while she was in disciplinary detention did

16

not violate her First Amendment rights); Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004) ("Although an involuntary committed person at a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner.")

Thus, even reading the Complaint as a whole, construing it liberally, taking all the facts pled within as true, and drawing all reasonable inferences in Plaintiff's favor, he has failed to plausibly assert any claim for a violation of his Fourth Amendment property rights due to the temporary restriction of his mail while he was in the HSA.

Accordingly, pursuant to Rule 12(b)(6), this Court recommends dismissing without prejudice Plaintiff's Fourth Amendment claims for failure to state a claim upon which relief can be granted.

### iv. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity from Plaintiff's claims against them in their individual capacity for which he seeks monetary damages as relief. (Mem. in Supp., [Docket No. 42], at 19). Because the Court finds that Plaintiff has failed to plausibly plead in his pro se Complaint any claim upon which relief may be granted, the Court need not address the question of qualified immunity.

## III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss, [Docket No. 40], be **GRANTED**;
2. All of Plaintiff's 42 U.S.C. § 1983 claims seeking injunctive relief from Defendants in their official and individual capacities, as well as, seeking monetary relief from

      Defendants in their individual capacities which are based upon alleged violations of the Fourth Amendment be **DISMISSED without prejudice**;

3. All of Plaintiff's 42 U.S.C. § 1983 claims seeking injunctive relief from Defendants in their official and individual capacities, as well as, seeking monetary relief from Defendants in their individual capacities which are based upon alleged violations of the Fourteenth Amendment's guarantees of procedural and substantive due process be **DISMISSED without prejudice**; and

4. All of Plaintiff's 42 U.S.C. § 1983 claims for monetary damages against Defendants in their official capacities be **DISMISSED with prejudice**.

Dated: May 22, 2019
                          s/Leo I. Brisbois
                          The Honorable Leo I. Brisbois
                          United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).